┌─────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App.
└─────────────────────────────────────────┘

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued September 25, 2013
Decided December 20, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-3377 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, | Northern District of Illinois, |
| *Plaintiff-Appellee*, | Eastern Division. |
| *v.* | No. 89 CR 742-1 |
| LUIS A. MUNOZ, | Charles P. Kocoras, |
| *Defendant-Appellant*. | *Judge*. |

### O R D E R

As part of a sting operation, the Federal Bureau of Investigation fronted $20,100 to a drug buyer cooperating with the government. The target of that operation was Luis Munoz, who sold a combined total of approximately 75 grams of heroin and 168 grams of cocaine to the government's buyer in two transactions in March and April 1988. This appeal concerns the $20,100 Munoz received as buy money. In sentencing Munoz on several drug-trafficking convictions stemming from the sting, the district court ordered him to repay the buy money to the government both as restitution and as a condition of supervised release. Only the latter is permissible, so we modify the judgment and affirm

it as modified. Repayment of the buy money is a condition of Munoz's supervised release, not restitution.

## I. Background

On March 4, 1988, and April 7, 1988, Munoz sold quantities of cocaine and heroin to an individual who was cooperating with the government in a controlled-buy operation. A year and a half later Munoz was indicted on four counts of illegal narcotics distribution in violation of 21 U.S.C. § 841 (2012). On March 1, 1990, he was convicted on all counts. Instead of attending his sentencing hearing, Munoz fled from the Northern District of Illinois to Mexico. He remained there for 22 years until surrendering to law enforcement in May 2012.

At sentencing in October 2012, the district court ordered Munoz to repay the $20,100 the government fronted as the drug buy money. The record reflects some uncertainty about the proper legal basis for the repayment order. The judge was initially unclear about whether to issue a restitution order or make the repayment a condition of supervised release. The only practical difference is the timing of the repayment obligation. Restitution is due immediately; conditions of supervised release are fulfilled following imprisonment. *United States v. Cook*, 406 F.3d 485, 489 (7th Cir. 2005).

The judge recognized that he had the authority to order Munoz to repay the buy money as a condition of supervised release but was unsure whether a separate restitution order would also be appropriate. The court's comments at sentencing reflect this confusion:

> I am going to put him on supervised release for three years, and make a condition of that release that he make restitution to the government in the amount of $20,100. And I am going to order that separately as a condition of supervised release, or a requirement of restitution.

The written judgment is also ambiguous on this point. On page 5 the judgment lists restitution in the amount of $20,100 payable to the Federal Bureau of Investigation. But the box indicating that "[t]he defendant must make restitution" was left unchecked, as were other checkboxes related to restitution. On the next page, the district court

checked another box and wrote as follows: "Lump sum payment of $20,300 due immediately, balance due in accordance [with the special instructions]."[1] In the space for special instructions, the court added, "Upon completion of the defendant's term of incarceration, it is ordered that any financial obligation balance shall become a condition of supervised release, and that the defendant's monthly payment schedule is at least 10% of his net monthly income."

## II. Analysis

Munoz raises two primary issues on appeal, both related to the buy money. First, he argues that the district court erroneously ordered repayment of the buy money as restitution. Second, he challenges the district court's authority to order repayment as a condition of supervised release. Because these issues involve legal questions, our review is de novo. *United States v. Tichenor*, 683 F.3d 358, 362 (7th Cir. 2012); *United States v. Webber*, 536 F.3d 584, 601 (7th Cir. 2008) (reviewing authority to impose restitution).

Federal courts lack " 'inherent authority to order restitution, and may do so only as explicitly empowered by statute.' " *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003) (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996)). In this case, the court's authority for the restitution order is found in the Victim and Witness Protection Act of 1982 ("VWPA").[2] But the VPWA does not authorize the court to order restitution of buy money. The Act authorizes restitution to "victims," *see* 18 U.S.C. §§ 3663, 3664 (2012), and the government is not a victim when it fronts buy money. *See Cook*, 406 F.3d at 489; *United States v. Brooks*, 114 F.3d 106, 108 (7th Cir. 1997); *United States v. Daddato*, 996 F.2d 903, 906 (7th Cir. 1993); *see also United States v. Gibbens*, 25 F.3d 28, 32 (1st Cir. 1994); *Gall v. United States*, 21 F.3d 107, 111 (6th Cir. 1994). Instead, buy money constitutes an investigative cost, *Daddato*, 996 F.2d at 905, and the VWPA does not

---

[1] In addition to restitution of the drug buy money, the amount included a $200 special assessment.

[2] The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A (2012), does not apply to this case. That law was passed as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 204, 110 Stat. 1214, 1227, which was enacted after the defendant committed the crimes charged, and Munoz's offense is not enumerated in § 3663A(c)(1). Moreover, voluntary costs related to criminal investigations are not victim losses within the meaning of the MVRA. *See United States v. Haileselassie*, 668 F.3d 1033, 1036–37 (8th Cir. 2012); *cf. United States v. Menza*, 137 F.3d 533, 539 (7th Cir. 1998) (same under the Victim and Witness Protection Act).

authorize the recovery of investigatory or prosecutorial expenses as "restitution." *United States v. Menza*, 137 F.3d 533, 539 (7th Cir. 1998). To the extent that the judgment ordered Munoz to repay the buy money as restitution, the district court erred.

The district court did not err, however, by ordering repayment of the buy money as a condition of Munoz's supervised release under the catch-all provision in § 3583(d).[3] That section authorizes, with some limitations, "any other condition" of supervised release that the court deems appropriate. 18 U.S.C. § 3583(d) (2012). We have repeatedly held that this provision permits the district court to impose repayment of buy money as a special condition of supervised release. *See, e.g.*, *Cook*, 406 F.3d at 489; *Brooks*, 114 F.3d at 108; *Daddato*, 996 F.2d at 906; *see also United States v. Anderson*, 583 F.3d 504, 509 (7th Cir. 2009) (discussing authority to order special conditions under the catch-all provision when those specific conditions are addressed elsewhere in the statute). Munoz offers no new argument for why *Daddato* should be overruled.

Our position has proven controversial among some of our sister circuits. The Second, Third, and Sixth Circuits disagree with our holding in *Daddato*; in their view, our interpretation of the catch-all provision in § 3583(a) allows the district courts to circumvent the statutory limitations on restitution orders. *See United States v. Varrone*, 554 F.3d 327, 335 (2d Cir. 2009); *United States v. Cottman*, 142 F.3d 160, 169–70 (3d Cir. 1998); *Gall*, 21 F.3d at 110. *But see United States v. Love*, 431 F.3d 477, 481 & n.15 (5th Cir. 2005) (distinguishing *Daddato* and *Cottman* by suggesting that because drug buy money was not restitution to a victim, ordering its repayment falls outside of the statutory restrictions on ordering restitution to victims under VWPA).[4]

Although other circuits disagree, we have repeatedly reaffirmed our precedent on this point. *See United States v. Gibbs*, 578 F.3d 694, 696 (7th Cir. 2009); *Brooks*, 114 F.3d at 108. While the VWPA and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A (2012), limit restitution to "victims," these statutes do not purport to regulate *all* circumstances under which a defendant may be ordered to repay money obtained in

---

[3] While the district court also has statutory authority to make restitution a condition of supervised release pursuant to 18 U.S.C. § 3563(b)(2), this paragraph limits restitution to a "victim of the offense." Thus, the district court could not rely on this paragraph to order Munoz to repay the buy money.

[4] Despite distinguishing *Daddato* and *Cottman*, the Fifth Circuit did say that "it is probable that the catch-all provision would not allow a court to order in the first instance restitution for which Congress implicitly has denied authorization by not allowing it under § 3563(b)(2)." *United States v. Love*, 431 F.3d 477, 483 (5th Cir. 2005).

connection with the commission of the crime. *Daddato*, 996 F.2d at 905. By ordering Munoz to repay the drug buy money, the district court permitted the government to recover an investigative cost. This was not permissible as a restitution order. But under our circuit precedent, repayment of buy money may be imposed as a condition of supervised release, and therefore the district court's use of its catch-all authority under § 3583(d) was not an impermissible circumvention of the limits on restitution.

The government concedes the restitution error but urges us to correct it by modifying the judgment so that repayment of the drug buy money is only a special condition of supervised release—not also a separate restitution requirement. We agree that this modification offers full relief for the restitution error and is appropriate in this situation. *See United States v. Munoz*, 610 F.3d 989, 997 (7th Cir. 2010) (modifying judgment to correct a sentencing error and affirming the judgment as modified); *United States v. Boyd*, 608 F.3d 331, 335 (7th Cir. 2010) (same). The change is not merely formalistic. Munoz will not be required to repay the drug buy money until his period of supervised release begins, whereas restitution is generally due immediately. *Cook*, 406 F.3d at 489; *see also United States v. Hassebrock*, 663 F.3d 906, 924 (7th Cir. 2011).

This distinction resolves Munoz's final challenge. In his reply brief, Munoz asserts that because the government did not cross-appeal, a remand for resentencing is inappropriate. He relies on *United States v. Gutierrez-Ceja*, which holds that in the absence of a cross-appeal by the government, a remand for the imposition of an additional condition of supervised release is improper. 711 F.3d 780, 783 (7th Cir. 2013) ("[W]e have no authority to order a reversal in order to give the judge an opportunity to impose a term of supervised release—an additional sentence—when the government has not filed a cross-appeal."). But the modification here does not impose an additional condition of supervised release. Modifying the judgment does not increase or add to the sentence; it merely corrects the erroneous restitution order, shifting the timing of the repayment obligation to Munoz's period of supervised release. Having the ability to pay later works in Munoz's favor.[5]

Accordingly, we modify the judgment to remove the buy-money restitution order and clarify that repayment of the $20,100 is a condition of supervised release only, due at the time Munoz begins serving that part of his sentence. As modified, the judgment is **AFFIRMED**.

---

[5] The district court's ambiguous judgment may have also imposed two duties on Munoz to pay—once as a restitution requirement and, again, as a special condition of supervised release. If this is so, then we are simply vacating the former part of the judgment.